IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KEVIN DEAN HALE, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 6:16-CV-01215-JDL |
| | § | |
| v. | § | |
| | § | |
| ACTING COMMISSIONER CAROLYN | § | |
| W. COLVIN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On October 7, 2016, Plaintiff initiated this civil action pursuant to the Social Security

Act, Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for

Social Security benefits. Pursuant to 42 U.S.C. § 405(g), the case is before this Court for

findings of fact and conclusions of law. For the reasons stated below, the Court **AFFIRMS** the

ALJ's decision.

## BACKGROUND

On January 13, 2011, Plaintiff filed a Title II Application for a period of disability and

disability insurance benefits and a Title XVI application for supplemental security income for a

period beginning on January 13, 2011. (Transcript ("Tr.") at 103.) The claims were initially

denied on May 4, 2011. *Id.* at 96–97. The claims were denied upon reconsideration on

September 23, 2011. *Id.* at 98–99. Plaintiff requested a hearing with the ALJ and had a video

hearing on August 14, 2012. *Id.* at 78–95 (hearing testimony). The ALJ denied the claims on

August 23, 2012. *Id.* at 113. On November 25, 2013, the Appeals Council granted a request for

review, directing the ALJ to give further consideration to the treating physician, J.W. Dailey,

1

M.D. and analyze the weight given to the evidence of Dr. Dailey's assessment against the conflicting residual functional capacity. *Id.* at 119. The Appeals Council indicated that the ALJ would: (1) endeavor to obtain updated and additional evidence of Plaintiff's impairments; (2) further evaluate Plaintiff's subjective complaints and provide rationale in accordance with the disability regulations; (3) give further consideration to the claimant's maximum residual capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations; and (4) if necessary, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Plaintiff's occupational base. *Id.* at 119–20. A second video hearing was held on October 29, 2014. *Id.* at 54–77 (second hearing testimony). The ALJ denied the claims on March 4, 2015. *Id.* at 42. On August 11, 2016, the Appeals Council denied a request for review. *Id.* at 1–3. Therefore, the ALJ's decision became the Commissioner's decision, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000), and Plaintiff initiated this civil action for judicial review.

## STANDARD

Title II of the Act provides for federal disability insurance benefits while Title XVI provides for supplemental security income for the disabled. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d

162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); SSR 96-5p, 61 Fed. Reg. 34471 (July 2, 1996).

"Substantial evidence is more than a scintilla but less than a preponderance–that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 F. App'x 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d at 393. The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the

Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 416.920(b)-(f) and 404.1520(b)(1)(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his March 4, 2015 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since June 27, 2006, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following "severe" impairments: rheumatoid arthritis, osteoarthritis of the knees, hypertension, degenerative disc disease, spondylosis, dysthymic disorder, and depression (20 CFR 404.1520(c) and 416.920(c)). The claimant's chronic pain / chronic pain syndrome does not fulfill the definition of a medically determinable impairment. The claimant's drug and alcohol abuse is in remission and is therefore not "material."

4. I agree with the DDS consultants that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I agree with the DDS consultants that the impairments reasonably result in a residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant can make decisions, accept instructions, attend and concentrate for two-hour periods, interact adequately with others, and respond appropriately to changes in a routine work setting, he [can] maximally understand, remember, and carry out simple instructions. The consultant assigned no social restrictions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 14, 1964 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and assigned residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform by operation of the Grid Rules.

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 27, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 16–42.)

The ALJ determined that Plaintiff is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. *Id.* at 39.

## ANALYSIS

Plaintiff objects to the ALJ's finding on the basis that his RFC finding is not supported by substantial evidence. (Doc. No. 18 at 4.) Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's treating doctor, James Dailey, M.D. *Id.* at 5. Plaintiff also maintains that the ALJ did not consider all the evidence in Plaintiff's medical record or Plaintiff's subjective complaints, and failed to accommodate for Plaintiff's impairments and resulting symptoms. *Id.* The Commissioner maintains that the ALJ analyzed the entire medical record of Plaintiff,

Plaintiff's statements about his limitations, and the opinions of non-treating doctors, and that substantial evidence supports the RFC assessment. (Doc. No. 19 at 6–24.)

After a medically determinable impairment is identified, the ALJ must then evaluate the Plaintiff's statements about his symptoms and consider the remaining evidence in the record to determine the intensity, persistence, and functionally limiting effects of the symptoms and how they affect the Plaintiff's ability to do basic work. "This requires the ALJ to make a finding about the credibility of the plaintiff's statements about the symptoms and their functional effects." *Salgado v. Astrue,* 271 F. App'x 456, 458–59 (5th Cir. 2008) (citing SSR 96-7p).[1] "In evaluating the intensity and persistence of [Plaintiff's] symptoms, [the ALJ considers] all of the available evidence, including [Plaintiff's] history, the signs and laboratory findings, and statements from [Plaintiff], [Plaintiff's] treating or nontreating source, or other persons about how [Plaintiff's] symptoms affect [him]." 20 C.F.R. § 404.1529(c). Although an ALJ must give specific reasons for a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F.Supp.2d 863, 871 (E.D. Tex. 2005).

If an ALJ does not give a treating doctor substantial weight, he must consider specific factors in deciding the weight to give to the medical opinion, including the examining relationship, treatment relationship, supportability, consistency with the record, and specialization. *Bryant v. Astrue*, 272 Fed. Appx. 352, 355 (5th Cir. 2008). "Some opinions by physicians are not medical opinions, and as such have no 'special significance' in the ALJ's

---

[1] While SSR 96-7 was rescinded on March 16, 2016, the ALJ's decision was made prior to that change and the Court therefore applies the regulations as they stood at that the time of the decision.

determination. Among the opinions by treating doctors that have no special legal significance are determinations that an applicant is 'disabled' or 'unable to work[.]'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted). This is because it is a legal determination reserved for the Commissioner. *Id.*

Dr. Dailey was one of Plaintiff's treating doctors from March 2010 through July 2014. (Tr. at 22–24.) He saw Plaintiff on multiple occasions, gave him various diagnoses, and was responsible for Plaintiff's prescription refills. In addition to Plaintiff's treatment, Dr. Dailey submitted three function assessments during the relevant period. *Id.* at 33. The support for Dr. Dailey's assessment opinions came from Plaintiff's subjective complaints of chronic plain, stiffness, and use of cane. *Id.* Dr. Dailey saw loss of tone, bulk, and strength in the extremities with impaired range of motion. *Id.* Dr. Dailey stated that Plaintiff had slight restrictions in working with detailed instruction due to his pain and depression, and also noted at various times different lifting restrictions. *Id.* Plaintiff had moderate restriction with working with pressures and responding to changes, and moderate difficulty interacting with others. *Id.*

The ALJ looked at the assessments done by Dr. Dailey and noted:

"[p]hysicians usually do not write medical reports with an eye toward legal standards – like whether a particular abnormality is reasonably likely to produce the quantum of pain or other symptoms alleged. Even if the claimant's doctor knows the answer, there is no accompanying explanation as to *why* the assigned degree of restriction was considered to be within the doctor's medical expectations, or not."

*Id.* at 34–35. Because the assessments appeared to have legal conclusions, the ALJ "partially discounted" them. *Id.* at 35. The ALJ found that Dr. Dailey's opinion did not clarify to the layman "whether [the opinion] is simply an admixture of subjective complaints and objective evidence under the general rubric of 'pain'." *Id.* The ALJ therefore found that Dr. Dailey's opinions were "brief and conclusory" and assigned them "split-weight." *Id.* He stated that

"[e]ven if the assigned limitations are completely accurate, the doctor was not asked to distinguish between the genuineness of the complaints [] and the limitations the impairments were reasonably expected to produce[.]" *Id.* The ALJ determined he could not give the opinion substantial weight because he was "simply not permitted to give full weight to medical opinions that are missing the supporting rationale, no matter how genuine the symptoms and limitations may otherwise appear to be." *Id.* at 35–36. In the ALJ's analysis, he details out the reasons Dr. Dailey's assessments are not given strong weight because of their opinions and not tied to specific medical evidence. (Tr. at 33–34.) The assessments were not medical opinions, but medical source statements. *Id.* at 613–14, 828–34. Therefore, the ALJ was allowed to give these statements less weight and the Court finds no reversible error.

As for the weight given to Dr. Dailey's medical records and the other medical evidence, the ALJ analyzed Plaintiff's medical history in-depth. *Id.* 19–25. Based on the medical records, the ALJ determined that Plaintiff's medical exams only show "mild deficits" with tenderness, limited range of motion in various joints, and antalgic behavior. *Id* at 38. The ALJ stated that the limits in Plaintiff's fingers or wrists "appear[ed] to be the result of chronic pain, not a medically determinable impairment." *Id.* The ALJ also noted that "[h]is treatment has been conservative in nature and primarily involved medications and injections. The record suggests that these treatments were effective." *Id.* at 32. The ALJ maintained that Plaintiff reported with 60% effectiveness after injections, and "treatment notes show that he presented for almost two years from April 2012 to February 2014 primarily for medication refills, which suggests that this medication was effective." *Id.* The ALJ noted that any treatment Plaintiff had from 2012 to 2014 was not for the conditions that Plaintiff alleged were disabling. *Id.*

Although Plaintiff argues that the ALJ did not consider Dr. Dailey's report, the record as a whole shows that he considered the medical evidence and the opinion evidence and articulated clear reasons for his findings. The Court finds no reversible error.

Plaintiff next argues that the ALJ did not consider Plaintiff's subjective complaints but only affirmed his previous findings by agreeing with the DDS. (Doc. No. 18 at 5.) The ALJ noted that Plaintiff listed issues showering, cooking, and cleaning due to dropping items, difficulty with being on his feet, and falling frequently so he only showered once a week. (Tr. at 31.) Plaintiff also had difficulty with buttons, zippers, and shoe laces and difficulty raising his arms, handling money, and writing. *Id.* However, the ALJ found that Plaintiff appeared to be independent in self-care and in instrumental activities of daily living and reported few deficits in that area. *Id.* at 32. Further, the report stated that Plaintiff indicated the symptoms tended to wax and wane. *Id.* The ALJ looked at all of Plaintiff's complaints and concluded that the Plaintiff "clearly has a perception of disability from full-time, competitive employment. The [Plaintiff's] allegations are consistent with that perception, whether or not there is an objective reason for the perception." *Id.* at 33. However, the ALJ noted that, according to the acts and regulations, Plaintiff's limitations can "diminish the capacity for basic work activities only to the extent that they may reasonably be accepted as consistent with the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*

The ALJ looked at all Plaintiff's medical records from three treating physicians, opinion evidence from four doctors, and compared this to Plaintiff's subjective complaints. *Id.* at 20–25, 33–40. The ALJ determined that Plaintiff's medical evidence had a basis for some of Plaintiff's complaints, but the substantial evidence supported the consultants' conclusions that the degree of pain experienced were out of proportion and inconsistent with the medical findings and

expectations, and Plaintiff was therefore not credible. *Id.* Because the ALJ looked at Plaintiff's subjective complaints against the entire medical records and opinion evidence to find Plaintiff's complaints were not credible, the Court sees no reversible error based on the record.

In sum, the ALJ gave specific reasons for finding Plaintiff's statements not credible that were supported by substantial evidence in the record. The ALJ enumerated those reasons and fully considered the evidence in the record consistent with the consideration of the factors set forth in the regulations. For these reasons, the Court finds no error in the ALJ's determination.

## CONCLUSION

It is accordingly **ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's complaint is hereby **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 12th day of February, 2018.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE